IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE PICKARD IRREVOCABLE TRUST #1,

    Plaintiff,

vs.                                                                                                                   Civ. No. 02-1089  MV/RHS

SBA PROPERTIES, INC.,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Plaintiff's Motion to Vacate, filed November 25, 2003, **[Doc. No. 11]**, Defendant's Motion for Order Confirming Arbitration Awards, filed March 12, 2004, **[Doc. No. 15],** and Defendant's Application for Costs and Attorney's Fees, filed March 12, 2004, **[Doc. No. 16]**. The Court, having considered the motions, responses, replies, relevant law, and being otherwise fully informed, finds that the Motion to Vacate is well-taken and will be **GRANTED in part** and the Motion for Order Confirming Arbitration Awards and the Application for Costs and Attorney's Fees are not well-taken and will be **DENIED**.

**FACTUAL BACKGROUND**

This matter involves a dispute over the sale of a cell tower located in Sandoval County, New Mexcio.[1] On or about May 3, 2001, Plaintiff Pickard Irrevocable Trust #1 ("Pickard Trust") and Defendant SBA Properties, Inc., ("SBA") entered into a Purchase and Sale Agreement

---

[1] As part of the same transaction, Pickard Trust also leased land to SBA. The terms of the lease, however, are not at issue in this dispute.

("Agreement") pursuant to which the Pickard Trust sold a cell tower to SBA.[2] The purchase price of the tower was based on the annual net operating income ("ANOI") generated by the tower. At the time the Agreement was executed, the ANOI generated by the cell tower was $35,000.00 per year--the top portion of the cell tower was leased at a rate of $18,000.00 per year and the lower portion of the cell tower was leased at a rate of $17,000.00 per year. The sale price of the cell tower was $675,000.00, or approximately nineteen times the ANOI.

Prior to closing, the lessee of the lower part of the cell tower terminated its lease, dropping the ANOI of the tower to $18,000.00. As a result, the parties executed an Amendment to Purchase and Sale Agreement ("Amendment") on or about June 19, 2001. The Amendment provided that the purchase price of the cell tower would remain $675,000.00 but that the purchase price would be paid as follows:

> 3.2.1   The first installment of the Purchase Price shall be an amount equal to the ANOI being generated by the Tower as of the Closing Date multiplied by a factor 19.29x.
>
> * * *
>
> 3.2.2   The second instalment of the Purchase Price is conditional and shall only be due and payable if the conditions of this Section 3.2.2 are met. If within twelve (12) months after the Closing Date a broadband tenant, not otherwise installed as of the Closing Date, signs a lease for space on the Tower on terms acceptable to Purchaser including a monthly rental of not less than One Thousand Five Hundred and no/100s Dollars ($1,500.00) for a term of no less than five (5) years, such lease to be on Purchaser's standard form lease or such other form reasonably acceptable to Purchaser, and such tenant either installs its equipment on the Tower or Waives any termination rights provided under such lease prior to the expiration of such (12) month period, Purchaser will pay Seller the second installment of the Purchase Price in the amount of Three Hundred Thirty-Seven Thousand Five Hundred and no/100s Dollars ($337,500.00) within ten (10) days from such additional tenant's installation on the Tower or execution of a waiver of

---

[2] The Agreement was signed by Pickard Trust on April 26, 2001, and by SBA on May 3, 2001.

termination rights, as the case may be.  Purchaser shall use commercially reasonable effort to enter into a lease with a broadband tenant.

*  *  *

SBA paid the first installment of $337,500.00 to Pickard Trust at closing.  When nearly a year had passed without SBA securing an additional tenant for the cell tower, Pickard Trust secured a leasee, Pacific Equities, L.L.C., ("Pacific Equities"), for the lower level of the cell tower at a rate of $1,500.00 per month.[3]  Pacific Equities' lease was on SBA's standard lease form and Pacific Equities waived its right to terminate the lease for five years.  SBA, however, refused to pay the second installment to Pickard Trust on the grounds that Pacific Equities was not a "broadband tenant."

On or about October 1, 2003, SBA sold the cell tower, along with a number of other cell towers, to AAT Communications Corp., ("AAT"), for approximately eleven times the ANOI. The ANOI used as a basis for the sale price of the cell tower included the monies being paid under the Pacific Equities lease.

Pickard Trust filed an action in New Mexico state court alleging, in part, breach of contract, breach of duty of good faith and fair dealing, promissory estoppel, and unconscionability and seeking a declaratory judgment as to whether the Agreement required binding arbitration of the instant dispute.  SBA removed the action to this Court pursuant to 28 U.S.C. § 1441, asserting that this Court has original jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy is in excess of $75,000.00.

SBA filed a motion to compel arbitration of the dispute according to the terms of the

---

[3] It appears that Philip Pickard, the Trustee of Pickard Trust, is also the Managing Member of Pacific Equities.  *See* Brief in Support of Plaintiff's Motion to Vacate at p. 4.

Agreement and to stay all further proceedings in this matter until completion of the arbitration. Pickard Trust initially opposed this motion but later agreed to stay this action pending completion of the arbitration. *See* Consent Order Staying Proceedings, filed July 15, 2003 [Doc. No. 10].

The dispute proceeded to arbitration on June 4-5, 2003, in Palm Beach, Florida. The Demand for Arbitration submitted by Pickard Trust asserted that 1) SBA failed to use a commercially reasonable effort to secure a new tenant, as required by Section 3.2.2 of the Amendment, and 2) the lease signed by Pacific Equities satisfied the requirements of Section 3.2.2, triggering SBA's obligation to pay the second installment in the amount of $337,500.00. On July 14, 2003, the arbitrator issued an Arbitration Award which stated, in its entirety, that:

> Pickard Trust seeks $337,000 from SBA as the second installment due to the sale of the cellular tower (tower) in New Mexico. Pickard claims that all of the "real" conditions of the Amended Purchase Agreement have been met. SBA claims that a broadband tenant is required under Section 3.2.2 as a condition precedent to payment of the $337,000. Pickard claims that the undefined term, "broadband", makes the contract ambiguous.
>
> Although there were several definitions of broadband discussed during the hearing, I find that the term is not ambiguous. That being the case, a condition precedent to Section 3.2.2 has not been met. Thus the second installment is not due.
>
> I am going to exercise my equitable powers to Order that henceforth, all payments due under the Antenna Site Agreement be made by SBA as it would be unfair to require Pacific Equities to make the payments on a going foreword [sic] basis without receiving the second installment. I further Order that SBA is to repay all monies received from Pacific Equities under the Antenna Site Agreement.
>
> Pursuant to Section 18 of the Purchase and Sale Agreement I hereby Order Pickard Trust to pay all the expenses and costs and reasonable attorneys fees for this arbitration, and only this arbitration, and not the other ancillary litigation.

July 14, 2003 Arbitration Award.

SBA filed a motion to modify the Arbitration Award asserting that the arbitrator had no authority to reform the Pacific Equities contract because that matter was not submitted to the arbitrator for decision.  The arbitrator agreed with SBA, and, on August 27, 2003, the arbitrator issued an Amended Arbitration Order withdrawing that portion of his previous award that required reformation of Pacific Equities' obligations under its lease with SBA.  On October 9, 2003, the arbitrator issued an order awarding SBA attorneys' fees and costs in the amount of $41,485.97.  On or about October 16, 2003, Pickard Trust filed a motion to reopen the hearing or, alternatively, for relief from the award.  It does not appear that the arbitrator has ruled on this motion.

On November 25, 2003, Pickard Trust filed a motion in this Court to vacate the arbitrator's awards pursuant to 9 U.S.C. § 10.  SBA filed a motion to confirm the arbitration awards pursuant to 9 U.S.C. § 9, and an application for costs and attorney's fees.

## ANALYSIS

A.   Jurisdiction

The Court must first determine if it has jurisdiction to confirm or vacate the arbitration award.  The Court's jurisdictional inquiry is twofold.  First, because the Federal Arbitration Act ("FAA") does not create any independent federal-question jurisdiction, there must be some other independent basis for federal jurisdiction before a federal court can act under the FAA.  *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 n. 32 (1983); *see also Oklahoma City Assocs. v. Wal-Mart Stores, Inc.*, 923 F.2d 791, 793 (10th Cir. 1991) (FAA requires an independent basis for subject matter jurisdiction).  In this case, the Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states, and the amount in

controversy exceeds $75,000.

> Second, Section 9 of the FAA provides, in relevant part, that:
>
> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, ... then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.  If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9 (emphasis added).  A court has no power to confirm an arbitration award under § 9 of the FAA unless the parties have agreed, explicitly or implicitly, that any eventual arbitration award shall be subject to judicial confirmation.  *See Oklahoma City Assocs.*, 923 F.2d at 793-94 ("The unambiguous language of § 9 leads us to believe that it creates its own level of subject matter jurisdiction for confirmation under the FAA . . . there is no federal court jurisdiction to confirm under the FAA where such jurisdiction has not been made a part of the arbitration agreement.").  In this case, the Agreement specifically provides that "[j]udgment upon any arbitration award may be entered into in any court having jurisdiction."  Agreement, ¶ 21.

The two requirements for subject matter jurisdiction over this action exist:  there is both federal jurisdiction under 28 U.S.C. § 1332 and an explicit agreement that an arbitration award is subject to judicial confirmation in satisfaction of 9 U.S.C. § 9.  The only remaining question, therefore, is whether this Court may confirm, vacate or modify an arbitration award that was not made in this district.  The United States Supreme Court has answered this question in the affirmative, finding that once a federal court has subject matter jurisdiction over an action, it may confirm, vacate, or modify an arbitration award even though it was not the district where the

award was granted. *See Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 120 S.Ct. 1331 (2000) (the venue provisions of the FAA are permissive, permitting a motion to confirm, vacate, or modify an arbitration award either where the award was made or in any district proper under the general venue statute, and do not restrict such a motion to the district where the award was made).

B.  Standard of Review

Judicial review of arbitral awards under the FAA is strictly limited. This highly deferential standard has been described as "among the narrowest known to the law." *Champion Boxed Beef Co. v. Local No. 7*, 24 F.3d 86, 87 (10th Cir. 1994). In consenting to arbitration, "'a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1182 (10th Cir. 2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S.Ct. 1647 (1991)). A court may not, therefore, independently judge an arbitration award. *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982).

An arbitration award made pursuant to the FAA can be vacated only for the reasons provided in § 10(a) of the FAA or in accordance with a limited number of judicially created exceptions. *See, e.g., W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183 (1983) (courts may vacate arbitration awards which violate public policy); *Wilko v. Swan*, 346 U.S. 427, 436-37, 74 S.Ct. 182, 187-88 (1953) (courts may set aside arbitration awards which are based upon a manifest disregard of the law), *overruled on other grounds*, 490 U.S. 477, 109 S.Ct. 1917(1989). Outside of these limited circumstances, an arbitration award must be confirmed pursuant to 9 U.S.C. § 9.

C.      Motion to Vacate Arbitration Awards

Pickard Trust seeks to vacate the arbitration awards pursuant to Section 10.  In relevant part, Section 10 of the FAA provides that a district court may vacate an arbitration award under certain limited circumstances including when arbitrators "refus[e] to hear evidence pertinent and material to the controversy" or "exceed[] their powers, or so imperfectly execute[] them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10.  A party attacking the legality of an arbitration award has the burden of sustaining such an attack.  *Ormsbee Dev. Co.*, 668 F.2d at 1147.

Pickard Trust contends that the arbitrator's awards must be vacated because (1) the arbitrator refused to hear "evidence pertinent and material to the controversy" and (2) the award is not "mutual, final and definite" because the arbitrator failed to address whether SBA used a "commercially reasonable effort" to secure a new tenant and because the Amended Arbitration Award deleted equitable relief that was "unequivocally tied" to the Arbitration Award.

1.      Pertinent and Material Evidence.  Pickard Trust contends that the arbitrator's awards should be vacated because the arbitrator refused to allow evidence "pertinent and material to the controversy."  *See* 9 U.S.C. § 10(c).  An arbitrator need not follow all of the "niceties" observed by the federal courts in making evidentiary rulings, but need only grant the parties a fundamentally fair hearing.  *Bell Aerospace Co. v. Local 516*, 500 F.2d 921, 923 (2d Cir. 1974).  "Only the most egregious error which resulted in adversely affecting the rights of a party would justify the application of [§ 10(c) ] and require vacatur of an award."  *Hunt v. Mobil Oil Corp.*, 654 F.Supp. 1487, 1512 (S.D.N.Y. 1987).

Pickard Trust complains that it was not provided all the discovery it requested regarding

8

the sale of the cell tower from SBA to AAT and that SBA's witness, Tom Hunt, testified about the aggregate price of all SBA towers sold to AAT but was not compelled to testify about how the price of the cell tower at issue in this dispute was determined. Pickard Trust asserts that evidence that the tower's sale price was based on the tower's net operating income, including the income from Pacific Equities' lease, was pertinent and material and should have been permitted.

The two issues presented to the arbitrator were 1) did SBA use a "commercially reasonable effort" to secure a new tenant and 2) did SBA's failure to pay the second half of the purchase price after Pacific Equities signed a lease for the lower portion of the tower breach the Agreement and/or Amendment. Pickard Trust has failed to demonstrate how evidence regarding SBA's subsequent sale of the cell tower was "pertinent and material" to either of these issues. Consequently, Pickard Trust has not sustained its burden of demonstrating that any pertinent and material evidence was excluded and that this exclusion resulted in a fundamentally unfair hearing.

Furthermore, SBA asserts, and Pickard Trust does not contest, that Mr. Hunt testified that the particular cell tower at issue was sold based upon a multiple of approximately eleven times the cash flow generated by the tower, including the cash flow generated by broadband as well as other tenants. Consequently, it appears that the information Pickard Trust alleges was improperly excluded was actually before the arbitrator.

    2.    Mutual, Final and Definite Award.

Pickard Trust asserts that the arbitrator's awards must be vacated because the arbitrator's subsequent deletion of the equitable relief from the arbitration award rendered the award so incomplete that it was no longer a "mutual, final, and definite award." "Mutual" and "final" have been interpreted to mean that the arbitrator resolved the entire dispute that was submitted to him.

9

*See Fradella v. Petricca*, 183 F.3d 17, 19 (1st Cir. 1999) (an arbitral award is deemed "final" provided it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration). It is not a question of whether the arbitrator's reasoning is incomplete but whether the award itself is incomplete in the sense of having left unresolved a portion of the parties' dispute.

The Arbitration Award contained an equitable provision relieving Pacific Equities of its obligation to make payments to SBA under its lease. SBA challenged the authority of the arbitrator to grant this relief because the Pacific Equities lease was not one of the issues submitted for arbitration. The arbitrator agreed that he was without authority to grant the equitable relief and issued an Amended Arbitration Order deleting the improper equitable relief. Pickard Trust claims that the equitable relief was a fundamental tenet of the Arbitration Award and that its subsequent deletion rendered the Amended Arbitration Award so incomplete that it was no longer a "mutual, final, and definite award."

Pickard Trust's argument assumes that the two issues addressed in the Arbitration Award--whether Pacific Equities is a "broadband" tenant and whether equitable relief is warranted--are intertwined such that the arbitrator would have reached a different determination regarding whether Pacific Equities is a "broadband tenant" if the arbitrator had not awarded equitable relief. There is no basis for this assumption. To the contrary, the fact that the arbitrator severed the equitable relief from the Arbitration Award without any modification of his finding regarding whether Pacific Equities was a "broadband" tenant firmly refutes Pickard Trust's argument that the two issues were "unequivocally" tied together. Under the narrow standard of review applicable to arbitrator's awards, the Court cannot vacate an arbitration award based solely upon

10

a party's speculation regarding the interrelatedness of findings in an arbitration award.

Finally, Pickard Trust asserts that the arbitrator's failure to address one of the issues submitted to him for resolution renders the awards incomplete. One of the two issues Pickard Trust submitted to arbitration was whether SBA made a "commercially reasonable effort" to secure a tenant for the cell tower as required by Section 3.2.2 of the Amendment. Apparently testimony and evidence was received on this issue during the arbitration hearing. Neither the Arbitration Award nor the Amended Arbitration Award, however, specifically address this issue. Furthermore, a finding on this issue is not implicit in the arbitrator's determination that a condition precedent to Section 3.2.2 of the Amendment was not met. It is impossible, therefore, to determine if the arbitrator found that a "commercially reasonable effort" was made or simply overlooked this issue.

Because the arbitrator did not address one of the issues submitted to him for arbitration in his award, and resolution of this issue could materially alter the arbitration award, the arbitration award is incomplete. Rather than vacate the award, however, the Court will remand this matter to the arbitrator for completion. *See, e.g., Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 112 (2d Cir. 1993) (remand permissible when award is incomplete); *Colonial Penn. Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 334 (3rd Cir. 1991) (courts have uniformly agreed that remand is appropriate to clarify ambiguous awards).

D.    Motion to Confirm Arbitration Awards

Section 9 of the FAA provides that a court must grant a motion to confirm an award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Because the Amended Arbitration Award is being remanded to the arbitrator

for completion, the Court will deny SBA's motion to confirm the arbitrator's awards. SBA, however, may renew its motion once a completed award is issued.

E.      Application for Costs and Attorney's Fees

SBA has filed a motion seeking its costs and attorney's fees incurred in this action. Under local rules, an application for an award of attorney's fees is not filed until after entry of judgment. *See* D.N.M.LR-Civ. 54.5 (a) & (b). No judgment has been entered in this matter and, therefore, SBA's application is premature.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Vacate, filed November 25, 2003, **[Doc. No. 11]** is hereby **GRANTED in part**. This matter is hereby remanded to the arbitrator to address the question of whether SBA Properties, Inc., made a "commercially reasonable effort" to locate a tenant for the cell tower as required by ¶ 3.2.2 of the Amendment to Purchase and Sale Agreement. In all other respects, Plaintiff's motion is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Order Confirming Arbitration Awards, filed March 12, 2004, **[Doc. No. 15],** is hereby **DENIED**.

**IT IS FINALLY ORDERED** that Defendant's Application for Costs and Attorney's Fees, filed March 12, 2004, **[Doc. No. 16]** is hereby **DENIED** as premature.

Dated this 2nd day of September, 2004.

_____
MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE

<u>Attorney for Plaintiff</u>:
    William J. Arland, III
    Michelle Henrie


<u>Attorney for Respondent</u>:
    Mel E. Yost