IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE PICKARD IRREVOCABLE TRUST #1,

    Plaintiff,

vs.                                              Civ. No. 02-1089  MV/RHS

SBA PROPERTIES, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Renewed Motion for Order Confirming Arbitration Awards, filed February 28, 2005, **[Doc. No. 25]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED**.[1]

---

[1] After filing its response, Pickard Trust submitted, as supplemental authority, a letter sent to the arbitrator during the remand by this Court. Pickard Trust's Submission of Supplemental Authority in Support of its Response to SBA's Renewed Motion for Order Confirming Arbitration Award, filed April 4, 2005, [Doc. No. 29]. SBA then filed a "supplemental reply" seeking to have the Court strike Pickard Trust's filing as an improper surreply or, in the alternative, consider the responsive argument made by SBA in the supplemental reply. *See* SBA's Supplemental Reply to Pickard Trust's Submission of Supplemental Authority In Support of Its Response to SBA's Renewed Motion for Order Confirming Arbitration Awards, filed April 7, 2005, [Doc. No. 30]. Pickard Trust submitted supplemental authority without any argument. This does not constitute a surreply and will not be stricken. SBA's "supplemental reply," which makes argument in response to Pickard Trust's submission, is a surreply. Under local rules, a party may only file a surreply with permission of the Court. *Se*e D.N.M.LR-Civ. 7.6(b). To the extent SBA's supplemental reply seeks to have the Court strike Pickard Trust's supplemental authority, it will be denied. The remainder of SBA's supplemental reply will be stricken as an improper surreply.

**FACTUAL BACKGROUND**

This matter involves a dispute over the sale of a cell tower located in Sandoval County, New Mexcio.[2] On or about May 3, 2001, Plaintiff Pickard Irrevocable Trust #1 ("Pickard Trust") and Defendant SBA Properties, Inc., ("SBA") entered into a Purchase and Sale Agreement ("Agreement") pursuant to which the Pickard Trust sold a cell tower to SBA.[3] The purchase price of the tower was based on the annual net operating income ("ANOI") generated by the tower. At the time the Agreement was executed, the ANOI generated by the cell tower was $35,000.00 per year--the top portion of the cell tower was leased at a rate of $18,000.00 per year and the lower portion of the cell tower was leased at a rate of $17,000.00 per year. The sale price of the cell tower was $675,000.00, or approximately nineteen times the ANOI.

Prior to closing, the lessee of the lower part of the cell tower terminated its lease, dropping the ANOI of the tower to $18,000.00. As a result, the parties executed an Amendment to Purchase and Sale Agreement ("Amendment") on or about June 19, 2001. The Amendment provided that the purchase price of the cell tower would remain $675,000.00 but that the purchase price would be paid as follows:

> 3.2.1   The first installment of the Purchase Price shall be an amount equal to the ANOI being generated by the Tower as of the Closing Date multiplied by a factor 19.29x.
>
> * * *
>
> 3.2.2   The second installment of the Purchase Price is conditional and shall only be due and payable if the conditions of this Section 3.2.2 are met. If within twelve

---

[2] As part of the same transaction, Pickard Trust also leased land to SBA. The terms of the lease, however, are not at issue in this dispute.

[3] The Agreement was signed by Pickard Trust on April 26, 2001, and by SBA on May 3, 2001.

2

(12) months after the Closing Date a broadband tenant, not otherwise installed as of the Closing Date, signs a lease for space on the Tower on terms acceptable to Purchaser including a monthly rental of not less than One Thousand Five Hundred and no/100s Dollars ($1,500.00) for a term of no less than five (5) years, such lease to be on Purchaser's standard form lease or such other form reasonably acceptable to Purchaser, and such tenant either installs its equipment on the Tower or Waives any termination rights provided under such lease prior to the expiration of such (12) month period, Purchaser will pay Seller the second installment of the Purchase Price in the amount of Three Hundred Thirty-Seven Thousand Five Hundred and no/100s Dollars ($337,500.00) within ten (10) days from such additional tenant's installation on the Tower or execution of a waiver of termination rights, as the case may be.  Purchaser shall use commercially reasonable effort to enter into a lease with a broadband tenant.

\* \* \*

SBA paid the first installment of $337,500.00 to Pickard Trust at closing. When nearly a year had passed without SBA securing an additional tenant for the cell tower, Pickard Trust secured a leasee, Pacific Equities, L.L.C., ("Pacific Equities"), for the lower level of the cell tower at a rate of $1,500.00 per month.[4] Pacific Equities' lease was on SBA's standard lease form and Pacific Equities waived its right to terminate the lease for five years. SBA, however, refused to pay the second installment to Pickard Trust on the grounds that Pacific Equities was not a "broadband tenant."

On or about October 1, 2003, SBA sold the cell tower, along with a number of other cell towers, to AAT Communications Corp., ("AAT"), for approximately eleven times the ANOI. The ANOI used as a basis for the sale price of the cell tower included the monies being paid under the Pacific Equities lease.

Pickard Trust filed an action in New Mexico state court alleging, in part, breach of

---

[4] It appears that Philip Pickard, the Trustee of Pickard Trust, is also the Managing Member of Pacific Equities. *See* Brief in Support of Plaintiff's Motion to Vacate at p. 4.

contract, breach of duty of good faith and fair dealing, promissory estoppel, and unconscionability and seeking a declaratory judgment as to whether the Agreement required binding arbitration of the instant dispute.  SBA removed the action to this Court pursuant to 28 U.S.C. § 1441, asserting that this Court has original jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy is in excess of $75,000.00.

SBA filed a motion to compel arbitration of the dispute according to the terms of the Agreement and to stay all further proceedings in this matter until completion of the arbitration. Pickard Trust initially opposed this motion but later agreed to stay this action pending completion of the arbitration.  *See* Consent Order Staying Proceedings, filed July 15, 2003, [Doc. No. 10].

The dispute proceeded to arbitration on June 4-5, 2003, in Palm Beach, Florida.  The Demand for Arbitration submitted by Pickard Trust asserted that 1) SBA failed to use a commercially reasonable effort to secure a new tenant, as required by Section 3.2.2 of the Amendment, and 2) the lease signed by Pacific Equities satisfied the requirements of Section 3.2.2, triggering SBA's obligation to pay the second installment in the amount of $337,500.00.  On July 14, 2003, the arbitrator issued an Arbitration Award which stated, in its entirety, that:

> Pickard Trust seeks $337,000 from SBA as the second installment due to the sale of the cellular tower (tower) in New Mexico.  Pickard claims that all of the "real" conditions of the Amended Purchase Agreement have been met.  SBA claims that a broadband tenant is required under Section 3.2.2 as a condition precedent to payment of the $337,000.  Pickard claims that the undefined term, "broadband", makes the contract ambiguous.
>
> Although there were several definitions of broadband discussed during the hearing, I find that the term is not ambiguous.  That being the case, a condition precedent to Section 3.2.2 has not been met.  Thus the second installment is not due.

> I am going to exercise my equitable powers to Order that henceforth, all payments due under the Antenna Site Agreement be made by SBA as it would be unfair to require Pacific Equities to make the payments on a going foreword [sic] basis without receiving the second installment.  I further Order that SBA is to repay all monies received from Pacific Equities under the Antenna Site Agreement.
>
> Pursuant to Section 18 of the Purchase and Sale Agreement I hereby Order Pickard Trust to pay all the expenses and costs and reasonable attorneys fees for this arbitration, and only this arbitration, and not the other ancillary litigation.

July 14, 2003 Arbitration Award.

SBA filed a motion to modify the Arbitration Award asserting that the arbitrator had no authority to reform the Pacific Equities contract because that matter was not submitted to the arbitrator for decision.  The arbitrator agreed with SBA, and, on August 27, 2003, the arbitrator issued an Amended Arbitration Order withdrawing that portion of his previous award that required reformation of Pacific Equities' obligations under its lease with SBA.  On October 9, 2003, the arbitrator issued an order awarding SBA attorneys' fees and costs in the amount of $41,485.97.  On or about October 16, 2003, Pickard Trust filed a motion to reopen the hearing or, alternatively, for relief from the award.  It does not appear that the arbitrator has ruled on this motion.

On November 25, 2003, Pickard Trust filed a motion in this Court to vacate the arbitrator's awards pursuant to 9 U.S.C. § 10 because (1) the arbitrator refused to hear "evidence pertinent and material to the controversy" and (2) the award was not "mutual, final and definite" because the arbitrator failed to address whether SBA used a "commercially reasonable effort" to secure a new tenant and because the Amended Arbitration Award deleted equitable relief that was "unequivocally tied" to the Arbitration Award.  SBA filed a motion to confirm the arbitration awards pursuant to 9 U.S.C. § 9.  In a Memorandum Opinion and Order filed on September 2,

5

2004, the Court determined that it had jurisdiction to confirm or vacate the arbitration award, that Pickard Trust had not sustained its burden of demonstrating that any pertinent and material evidence had been excluded or that the Amended Arbitration Award deleted equitable relief that was "unequivocally tied" to the Arbitration Award. The Court agreed, however, that the award was not definite because the arbitrator did not explicitly address the question of whether SBA made a "commercially reasonable effort" to locate a tenant for the cell tower. Rather than vacate the award, however, the Court remanded the matter to the arbitrator for completion. *See, e.g., Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 112 (2d Cir. 1993) (remand permissible when award is incomplete); *Colonial Penn. Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 334 (3rd Cir. 1991) (courts have uniformly agreed that remand is appropriate to clarify ambiguous awards).

On December 17, 2004, the arbitrator issued a Supplemental Arbitration Award, which stated that

> It was my belief at the conclusion of the evidence and argument and it is my belief now that SBA used commercially reasonable efforts to market the tower in question. I therefore find that commercially reasonable efforts were used by SBA in connection with this transaction.

December 17, 2004 Supplemental Arbitration Award. SBA subsequently renewed its motion for an order confirming the arbitration awards.

## ANALYSIS

Judicial review of arbitral awards under the FAA is strictly limited. This highly deferential standard has been described as "among the narrowest known to the law." *Champion Boxed Beef Co. v. Local No. 7*, 24 F.3d 86, 87 (10th Cir. 1994). In consenting to arbitration, "'a party trades

the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1182 (10th Cir. 2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S.Ct. 1647 (1991)). A court may not, therefore, independently judge an arbitration award. *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982).

Section 9 of the FAA provides that a court must grant a motion to confirm an award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. An arbitration award made pursuant to the FAA can be vacated only for the reasons provided in § 10(a) of the FAA or in accordance with a limited number of judicially created exceptions. *See, e.g., W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183 (1983) (courts may vacate arbitration awards which violate public policy); *Wilko v. Swan*, 346 U.S. 427, 436-37, 74 S.Ct. 182, 187-88 (1953) (courts may set aside arbitration awards which are based upon a manifest disregard of the law), *overruled on other grounds*, 490 U.S. 477, 109 S.Ct. 1917 (1989).

In relevant part, Section 10 of the FAA provides that a district court may vacate an arbitration award under certain limited circumstances including when arbitrators "refus[e] to hear evidence pertinent and material to the controversy" or "exceed[] their powers, or so imperfectly execute[] them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10. A party attacking the legality of an arbitration award has the burden of sustaining such an attack. *Ormsbee Dev. Co.*, 668 F.2d at 1147. Outside of these limited circumstances, an arbitration award must be confirmed pursuant to 9 U.S.C. § 9.

SBA seeks to have this Court confirm the arbitration awards now that the arbitrator has

7

explicitly ruled on the issue of whether SBA made a "commercially reasonable" effort to locate a tenant for the cell tower. Pickard Trust opposes this motion, arguing that the contract, as interpreted by the arbitrator, is unconscionable and/or was based on illusory consideration. Pickard Trust's argument that the arbitrator's interpretation of the contract renders the contract unconscionable or based on illusory consideration was raised, and implicitly rejected, by the arbitrator. *See* November 19, 2004 letter from Michelle Henrie to Jim Hinga.

"Errors in either the arbitrator's factual findings or his interpretation of law (unless that interpretation shows a manifest disregard of controlling law) do not justify review or reversal on the merits of the controversy." *Denver & Rio Grande Western Railroad Co. v. Union Pacific Railroad Co.*, 119 F.3d 847, 849 (10th Cir. 1997). The arbitrator's refusal to find an agreement freely entered into by sophisticated businessmen with equal bargaining power unconscionable simply because one party assumed more risk than another does not evidence a manifest disregard of controlling law. *See In Nearburg*, 1997-NMCA-069, ¶ 31, 943 P.2d 560 ("Parties to a contract agree to be bound by its provisions and must accept the burdens of the contract along with the benefits. When a contract was freely entered into by parties negotiating at arm's length, the duty of the courts is ordinarily to enforce the terms of the contract which the parties made for themselves. Although a contract may be declared void where it is unconscionable and oppressive in its terms, nevertheless, the fact that some of the terms of the agreement resulted in a hard bargain or subjected a party to exposure of substantial risk, does not render a contract unconscionable where it was negotiated at arm's length, and absent an affirmative showing of mistake, fraud or illegality.").

While Pickard Trust disagrees with the arbitrator's interpretation, Pickard Trust has not

demonstrated that the arbitrator so imperfectly executed his powers "that a mutual, final, and definite award upon the subject matter submitted was not made" or that the awards are contrary to public policy. *See* 9 U.S.C. § 10. In the absence of such a showing, the Court must affirm the arbitration awards.

C.     Interest

The Agreement provides, in part, that

> In the event of any litigation or arbitration arising out of this Agreement, the prevailing party will be entitled to recover all expenses and costs incurred, including reasonable attorney's fees and costs.

Pursuant to this provision, the arbitrator awarded SBA $41,485.97 for the attorney's fees and costs SBA incurred in the arbitration. SBA now seeks prejudgment and post-judgment interest on this award. Pickard Trust does not contest SBA's interest request.

Prejudgment interest in a diversity action is governed by state law. *See Strickland Tower Maintenance, Inc. v. AT & T Communications, Inc.*, 128 F.3d 1422, 1429 (10th Cir. 1997) ("A federal court sitting in diversity applies state law, not federal law, regarding the issue of prejudgment interest."). Under New Mexico law, a discretionary award of prejudgment interest is available in all cases and is awarded as a matter of right "when a party has breached a duty to pay a definite sum of money or 'the amount due under the contract can be ascertained with reasonable certainty by a mathematical standard fixed in the contract or by established market prices.'" *Smith v. McKee*, 116 N.M. 34, 36, 859 P.2d 1061, 1063 (1993) (quoting *Kueffer v. Kueffer*, 110 N.M. 10, 12, 791 P.2d 461, 463 (1990)); *see also Lucero v. Aladdin Beauty Colleges, Inc.*, 117 N.M. 269, 272, 871 P.2d 365, 368 (1994) (discretionary award of prejudgment interest is allowed in all cases). When a plaintiff is entitled to prejudgment interest as a matter of right, the burden

9

rests on the defendant to demonstrate a sufficient basis for denying such an award. *Ranch World of N.M., Inc. v. Berry Land & Cattle Co.*, 110 N.M. 402, 404, 796 P.2d 1098, 1100 (1990).

New Mexico law authorizes prejudgment interest as a matter of right in cases on money due by contract in order to compensate a claimant for the loss of use and earning power of the claimant's funds. NMSA 1978, § 56-8-3 (1983); *Ranch World of N.M.,* 110 N.M. at 404, 796 P.2d at 1100 ("This Court has adopted the view of the Restatement of Contracts § 337(a) (1932) that prejudgment interest should be awarded as a matter of right where the defendant has breached a contract to pay a definite sum of money."). When the amount owed is fixed or readily ascertainable, "prejudgment interest [under Section 56-8-3] generally should be awarded absent peculiar circumstances." *Ranch World of N.M.*, 100 N.M. at 404, 796 P.2d at 1100. "[T]he rate of prejudgment interest to be awarded under this statute is to be determined by the trial court in its discretion, subject to the statutory maximum of fifteen percent." *Sunwest Bank of Albuquerque v. Colucci*, 117 N.M. 373, 379, 872 P.2d 346, 352 (1994).

The award of attorney's fees by the arbitrator is money due by contract and is readily ascertainable. Thus, in the absence of any peculiar circumstances compelling the denial of such an award, prejudgment interest will be awarded as a matter of law pursuant to Section 56-8-3.

Once an arbitration award is confirmed in federal court, post-judgment interest on an attorney's fees award is a question of federal law controlled by 28 U.S.C. § 1961.[5] *See Transpower Constructors v. Grand River Dam Authority*, 905 F.2d 1413, 1423-24 (10th Cir.1990). The Tenth Circuit treats an attorney's fees award the same as any other money

---

[5] Section 1961 provides that "Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment...." 28 U.S.C. § 1961(a).

judgment and allows § 1961 post-judgment interest on attorney's fees awards to accrue when the award is included in the final merits judgment. *Id.* at 1423-24.

The Court will award prejudgment and post-judgment interest. The Court, in its discretion, will award both prejudgment and post-judgment interest at the current federal rate of 3.28%, which is less than the 15% maximum rate authorized under New Mexico law for prejudgment interest.

D.     Attorney's Fees

Under the Agreement, a prevailing party in any litigation or arbitration arising out of the Agreement is entitled to recover the attorney's fees and costs reasonably incurred during the litigation or arbitration. SBA, as the prevailing party in this action to confirm the arbitration awards, is entitled to recover its reasonable attorney's fees and costs. These fees and costs shall not include any fees and costs incurred in the arbitration, including the remand to the arbitrator by this Court to address the question of whether SBA made a "commercially reasonable effort" to locate a tenant for the cell tower, or any fees or costs for filing SBA's Supplemental Reply to Pickard Trust's Submission of Supplemental Authority In Support of Its Response to SBA's Renewed Motion for Order Confirming Arbitration Awards, which is being largely stricken by the Court. If the parties are unable to reach an agreement on the amount of fees and costs reasonably incurred by SBA, SBA may file an application for attorney's fees and costs with the Court.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the portion of SBA's Supplemental Reply to Pickard Trust's Submission of Supplemental Authority In Support of Its Response to SBA's Renewed Motion for Order Confirming Arbitration Awards, filed April 7, 2005, **[Doc. No. 30]**,

seeking to strike Pickard Trust's Submission of Supplemental Authority in Support of its Response to SBA's Renewed Motion for Order Confirming Arbitration Award, filed April 4, 2005, **[Doc. No. 29]**, is **DENIED**. The remainder of SBA's Supplemental Reply, which is a surreply filed without permission of the Court in violation of D.N.M.LR-Civ. 7.6(b), is hereby **STRICKEN**.

**IT IS FURTHER ORDERED** that Defendant's Renewed Motion for Order Confirming Arbitration Awards, filed February 28, 2005, **[Doc. No. 25]** is hereby **GRANTED**. The arbitrator's awards made on July 14, 2003, August 27, 2003, October 9, 2003, and December 17, 2004, are hereby confirmed. Judgment in favor of SBA Properties, Inc., is being entered concurrently.

**IT IS FURTHER ORDERED** that pre-judgment interest at the rate of 3.28% be awarded on the arbitrator's award of $41,485.97 from December 17, 2004, until the date judgment is entered and that post-judgment interest at the rate of 3.28% be awarded on this amount from the date of judgment until paid in full.

**IT IS FINALLY ORDERED** that the Court will retain jurisdiction of this case for the limited purpose of deciding the amount of reasonable attorney's fees and costs to be awarded to SBA Properties, Inc., in the event the parties are unable to resolve this matter without involvement of the Court. Within 60 days of the date of this Order, SBA Properties, Inc., shall either file a notice that the parties have agreed upon reasonable attorney's fees and costs or file an application for attorney's fees and costs with the Court.

Dated this 26th day of July, 2005.

_____
MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE

<u>Attorney for Plaintiff</u>:
    William J. Arland, III
    Michelle Henrie

<u>Attorney for Respondent</u>:
    Mel E. Yost

13